UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTOPHER M. THOMAS,

       Plaintiff,                       CASE NO. 06-CV-12905

-vs-                                    PAUL D. BORMAN
                                         UNITED STATES DISTRICT JUDGE

COMMISSIONER OF SOCIAL           DONALD A. SCHEER
SECURITY,                             UNITED STATES MAGISTRATE JUDGE

       Defendant.
_____/

**OPINION AND ORDER
(1) ACCEPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION;
(2) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT;
AND (3) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Before the Court are (1) the Magistrate Judge's November 29, 2006 Report and Recommendation Granting Defendant's Motion for Summary Judgment (Docket No. 11); and (2) Plaintiff's December 11, 2006 Objections to the Report and Recommendation (Docket No. 12). Having considered the entire record, and for the reasons that follow, the Court ACCEPTS the Magistrate Judge's Report and Recommendation, GRANTS Defendant's Motion for Summary Judgment, and DENIES Plaintiff's Motion for Summary Judgment.

**I.    BACKGROUND**

This case arises out of the Commissioner of Social Security's ("Defendant") denial of Christopher M. Thomas' ("Plaintiff") October 8, 2003 application for Social Security Disability Insurance and Supplemental Security Income benefits. Upon Plaintiff's original application,

Defendant denied benefits. (Record 51-53, 40-44, 206-08). Plaintiff requested a *de novo* hearing on January 30, 2004, complaining that he was still suffering from "left foot, left knee, and back pain caused by injury on 10/4/2001 – work related injury (chronic pain)." (Record 45). An Administrative Law Judge ("ALJ") held a hearing on August 9, 2005. Although Plaintiff had retained an attorney, Gregory M. Tobin, to act as his representative for that hearing, Plaintiff's counsel never appeared. Upon inquiry from the ALJ about the absence of counsel, Plaintiff stated that he and his counsel had decided to proceed without a representative. (Record 216-17). Plaintiff also signed a waiver of right to be represented form. (Record 50). On February 10, 2006, Defendant informed Plaintiff that it had rejected his claim for benefits. (Record 10-12).

Plaintiff's counsel then filed a Request for Review of Hearing Decision / Order on February 13, 2006. (Record 7-9). The Appeals Council denied Plaintiff's request on May 2, 2006. (Record 4-6). With the aid of new counsel, Plaintiff filed the instant case on June 30, 2006.

## II.  ANALYSIS

### A.  Standard of Review

Pursuant to Rule 72(b), this Court conducts a *de novo* review of any of the portions of the Magistrate Judge's Report and Recommendation to which a party has filed timely objections. *Lyons v. Comm'r of Social Sec.*, 351 F. Supp. 2d 659, 661 (E.D. Mich. 2004).

This Court reviews the Commissioner's decision to deny benefits under a substantial evidence standard:

> Under 42 U.S.C. § 405(g), the ALJ's findings are conclusive so long as they are supported by substantial evidence. [The Court's] review is limited to determining whether there is substantial evidence in the record to support the findings. Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Furthermore, [the

> Court] must defer to an agency's decision even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ. [The Court's] role is not to resolve conflicting evidence in the record or to examine the credibility of the claimant's testimony.

*Wright v. Massanari,* 321 F.3d 611, 614-15 (6th Cir. 2003) (internal citations and quotation marks omitted).

### B.     Plaintiff's Objections

Plaintiff makes the following Objections to the Magistrate Judge's Report and Recommendation: (1) the ALJ did not apply the "special technique" to Plaintiff's diagnosis of psychosis; (2) the ALJ failed to clarify Dr. Venkataraman's diagnosis; (3) Plaintiff did not make a voluntary waiver of counsel at the ALJ hearing; and (4) the Appeals Council did not permit Plaintiff's substitute counsel to file a brief in support of his appeal. Defendant did not file a timely Answer to Plaintiff's Objections.

#### 1.     Plaintiff's Diagnoses of Mental Disorders

Plaintiff argues that the ALJ failed to employ the "special technique" listed in 20 C.F.R. § 404.1520a since he only considered Plaintiff's diagnosis of schizophrenia, and not his diagnosis of psychosis. Plaintiff contends that since the ALJ found that Plaintiff had been diagnosed with psychosis, the ALJ was obligated to first assess whether the claimant had a medically determinable mental impairment and then assess the degree of functional limitation. Moreover, Plaintiff maintains that the ALJ did not make specific findings under Listing 12.03(C) if Plaintiff's psychosis caused more than a minimal limitation of ability to do basic work activities or if a minimal increase in mental demands would have caused decompensation.

Plaintiff also objects that the ALJ failed to investigate fully an illegible portion of Dr.

Venkataraman's diagnosis. Plaintiff contends that this illegible portion should read "schizophrenia." Plaintiff requests that the Court remand the case so that the ALJ can clarify Dr. Venkataraman's true diagnosis and take it into account in assessing Plaintiff's eligibility.

As an initial matter, the Court notes that at the August 9, 2005 hearing, Plaintiff's wife requested the she be permitted to submit additional medical records pertaining to Plaintiff's mental condition. (Record 235-36). The ALJ agreed to keep the record open for thirty (30) days, yet those records were never submitted. (Record 13).

The ALJ determined from the record that Plaintiff's diagnosis of mental disorders originated from an incident in September 2003, where the police found Plaintiff confused and attempting to enter the house of one of his neighbors. (Record 18). In late September 2003, Dr. Saran evaluated Plaintiff further and recommended psychosis therapy. (*Id.*). On October 2, 2003, Plaintiff agreed to a counseling treatment plan at Eastwood Clinics. (Record 19). On October 11, 2003, Dr. Memon reported that Plaintiff was responding well to his medication and diagnosed him with psychosis, not otherwise specified, and assigned a Global Assessment of Functioning ("GAF") of 55. (*Id.*).

After the records from October 2003, the next documentation of any diagnosis for any mental condition was a July 4, 2005 Intake Assessment. (*Id.*). At that time, Plaintiff denied hallucinations and was not on any psychiatric medications. (Record 19). His thought process was slow; his behavior withdrawn; and his judgment, insight, and motivation were fair. (Record 19-20). The Intake Form noted that Plaintiff had feelings of hopelessness, helplesness, and debilitating guilt because of his inability to work. (Record 20). Plaintiff was diagnosed with moderate depressive disorder and assigned a GAF of 51. (Record 20).

The ALJ stated that Dr. Venkataraman's July 14, 2005 Psychiatric Evaluation found that Plaintiff suffered from "chronic undifferentiated [illegible]." (Record 20, 196-99, 204). The ALJ stated that "the rest of the diagnosis is illegible with 'rule out major depressive disorder' severe with a GAF of 30 to 40." (Record 20). Plaintiff strongly urges this Court to consider the illegible portion of the form to read "schizophrenia." After considering the Diagnostic and Statistical Manual of Mental Disorders IV, the ALJ concluded that Plaintiff's GAF should be assessed at GAF 51-55, rather than a GAF range of 30-40. (*Id.*).

Defendant argues that even if the ALJ was obligated to decipher the illegible notation by Dr. Venkataraman on the July 14, 2005 records, there is no indication that Plaintiff was disabled or limited from working because of his mental impairments. Defendant further contends that even if Plaintiff was diagnosed with schizophrenia or psychosis in July 2005, that condition had not lasted the requsite twelve (12) months to be considered disabling under the federal statute and regulations.

Moreover, at the August 9, 2005 hearing, Plaintiff admitted that the treatment that he was receiving for his mental disorders was working. In reference to his 2003 diagnoses, the transcript reads:

> Q:   Well, what kind of treatment are you receiving for that?
> A:   Medication.
> Q:   What are you taking?
> A:   Risperdal.
> Q:   And does that help?
> A:   Yes.
> Q:   Do you have any side effects from the Risperdal?
> A:   Yes.
> Q:   And what side effects do you have?
> A:   Nausea, dizzy, loss of appetite.
> Q:   The --

> A:  Unable to think clearly.
> Q:  The symptoms that you have. When you take the medication do you feel better? Do you get relief from the problems?
> A:  Yes.

(Record 224). When asked about his July 2005 treatment, the transcript reflects the following:

> Q:  Now this, you said that the doctor told you you had a psychotic disorder. What doctor told you that?
> A:  That's noted in this report.
> Q:  The report that you have?
> A:  Yes.
> Q:  How often do you go see that doctor?
> A:  Not often.
> Q:  You don't treat with anybody for your psychotic disorder?
> A:  I have a new doctor. I don't have his name. It's on this medication. I don't have the name. I am being treated by a doctor for that disorder.
> Q:  What does he do besides prescribe medication?
> A:  Verbal therapy.
> Q:  Are you getting better?
> A:  Yes.

(Record 228-29).

A claimant has the ultimate burden of establishing evidence of disability. *Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). The Sixth Circuit has held that a mere diagnosis of an impairment does not render an individual disabled, nor does it reveal anything about the limitations, if any, it imposes on an individual. *Foster v. Bowen*, 853 F.2d 483, 489 (6th Cir. 1988). Even if the Court were the read Dr. Venkataraman's diagnosis as "schizophrenia," it appears from the record that Plaintiff's current treatment for his mental disorder had been working, that no medical records have been produced to demonstrate that his mental condition precluded him from employment, and that his mental condition had not lasted for twelve (12) months by the time the ALJ issued its decision.

Therefore, the Court holds that the ALJ's decision to deny benefits on this issue was

supported by substantial evidence.

2.  Voluntary Waiver of Counsel & Appeals Council Denial

Plaintiff objects that he did not validly waive his statutory right to representation at the ALJ hearing. Given his diagnosis of psychosis, per Plaintiff, he did not understand the significance of waiving his right to representation, even though his first counsel directed him to proceed with the hearing without representation. Plaintiff avers that with representation, counsel would have requested that the ALJ clarify the illegible diagnosis. According to Plaintiff, the ALJ further did not question Plaintiff to determine whether he understood the significance of his waiver of counsel. According to Plaintiff, the hearing could have been adjourned, and Plaintiff could have been provided a list of potential representatives.

Plaintiff also argues that the Appeals Council did not afford his new counsel an opportunity to file an appeal brief when he requested to do so on March 27, 2006. Plaintiff's original counsel had filed an appeal on February 13, 2006. Plaintiff's counsel then withdrew as his representative on March 23, 2006. The Appeals Council did not acknowledge that Dannelly Smith was Plaintiff's replacement representative. In fact, the Notice of Appeals Council Action issued on May 2, 2006, was sent to Plaintiff's former representative.

The following exchange from the ALJ hearing transcript concerns the waiver of counsel issue:

| | |
|---|---|
| ALJ: | You are here this morning. Apparently, you've just had a conversation with Mr. Tobin, who was listed as your representative, and he indicated that he wasn't coming. |
| CLMT: | Yes. |
| ALJ: | Does he still represent you? Is there any reason why he isn't coming? Has he withdrawn as your representative? I mean, it's very unusual to have a representative not show up at a hearing. |

| | |
|---|---|
| CLMT: | I spoke with him a week ago. |
| ALJ: | Yeah. |
| CLMT: | And I had to believe that he was showing up today. |
| ALJ: | Well, didn't you just talk to him now? |
| CLMT: | Yeah. He says he handles similar cases to proceed with the hearing. |
| ALJ: | Without him? |
| CLMT: | Yes. |
| ALJ: | All right. You've executed your waiver of your right to be represented. Are you ready to proceed? |
| CLMT: | Yes. |
| ALJ: | On your own without being represented? |
| CLMT: | Okay. |

(Record 216-17). Later in the hearing, the ALJ again addressed the subject of counsel when Plaintiff's wife mentioned the fact that she had additional medical records that were not submitted in advance of the hearing:

| | |
|---|---|
| THOMAS: | These are current doctors and the psychiatrist that the lawyer didn't get the records on. |
| ALJ: | Okay. Well, do you have a lawyer? I mean, you know, it is extremely unusual for somebody to have a representative, especially one from Illinois, and then for you to have to call him when he is supposed to be here, you know, and then just say no, he is not coming. I mean, that is more than ridiculous. Well, are you saying that there is additional information? |

(Record 235). Plaintiff signed a form waiving his right to representation at the hearing. (Record 50). Plaintiff's wife was also present at the hearing and provided some additional testimony.

The Supreme Court has not recognized a constitutional right to counsel at social security disability benefits hearings. *Brandyburg v. Sullivan*, 959 F.2d 555, 562 (5th Cir. 1992). Rather, the right to counsel at a hearing before the Commissioner of Social Security is a statutory right. 42 U.S.C. § 406. This statutory right falls well below the Sixth Amendment threshold. *Evangelista v. Sec'y of Health and Human Servs.*, 826 F.2d 136, 142 (1st Cir. 1987). Even if a claimant invalidly waives his or her right to representation, remand to the ALJ is only

appropriate if the claimant can show unfairness, prejudice, or procedural hurdles insurmountable by laymen. *Id*. (quotations and citation omitted); *see Edwards v. Sullivan*, 937 F.2d 580, 586 (11th Cir. 1991). Courts have also held that where a claimant appears at a hearing without counsel, the ALJ has a special duty and obligation to develop the record. *See, e.g., Lopez v. Sec'y of Dep't of Health and Human Servs*., 728 F.2d 148, 149-50 (2d Cir. 1984); *Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984).

In this instance, Plaintiff argues (1) that his waiver was ineffective due to his mental disorder and (2) that he was prejudiced in this instance because his counsel would have investigated the illegible writing in the July 14, 2005 evaluation.

The Court does not find that Plaintiff's waiver of counsel was involuntary in this instance. Initially, the waiver of appearance of counsel was a result of an agreement between Plaintiff and his attorney, on the advice of his attorney. This is not a case where a claimant's waiver on the record was "ambiguous" or amounted to something less than an unequivocal waiver. *See, e.g., Benson v. Schweiker*, 652 F.2d 406, 408 (5th Cir. 1981) (finding that the claimant's answer of "Yes, sir" could have indicated an answer to one of several statements made by the ALJ). Plaintiff's provides no support for the assertion that his mental disorder prevented him from voluntarily waiving counsel at the hearing. Moreover, Plaintiff's counsel continued representation by appealing the ALJ's determination to the Appeals Council.

Even if Plaintiff's waiver of counsel was involuntary or ineffective, the Court finds that there was no prejudice. Plaintiff does not contend that the ALJ failed to develop adequately a record or to inquire into the issues. Plaintiff only claims that his counsel, if present, would have investigated Dr. Venkataraman's illegible diagnosis. However, according to the August 9, 2005

9

hearing transcript, the ALJ never indicated that he found Dr. Venkataraman's July 14, 2005 diagnosis indecipherable. That fact was not apparent until the ALJ issued its written decision in February 2006. Therefore, Plaintiff's argument that his counsel would have made a further inquiry if counsel had attended the hearing cannot be true. Plaintiff's counsel at the time appealed that decision on February 13, 2006, though it is not clear from the record upon what arguments counsel relied. (Record 7). Finally, as explained above, even if the July 14, 2005 diagnosis reads "schizophrenia," the Court finds that ALJ's determination is still supported by substantial evidence.

### III. CONCLUSION

For the foregoing reasons, the Court:

(1) **ACCEPTS** the Magistrate Judge's Report and Recommendation;

(2) **GRANTS** Defendant's Motion for Summary Judgment;

(3) **DENIES** Plaintiff's Motion for Summary Judgment.

**SO ORDERED.**

s/Paul D. Borman  
PAUL D. BORMAN  
UNITED STATES DISTRICT JUDGE

Dated: January 24, 2007

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on January 24, 2007.

s/Denise Goodine  
Case Manager